STATE OF CONNECTICUT *v.* BRIAN BROWN
(SC 17533)

BRIAN BROWN *v.* COMMISSIONER OF
CORRECTION
(SC 17534)

Sullivan, C. J., and Borden, Katz, Vertefeuille and Zarella, Js.*

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued January 10—officially released August 15, 2006

*Christopher M. Neary*, deputy assistant public defender, for the appellant (defendant in the first case, petitioner in the second case).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Eva B. Lenczewski*, supervisory assistant state's attorney, for the appellee (state in the first case, respondent in the second case).

*Opinion*

VERTEFEUILLE, J. In this consolidated appeal, the defendant and petitioner, Brian Brown,[1] appeals from the judgment of conviction, rendered after a jury trial, of one count each of the crimes of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-278 (a), and possession of a narcotic substance with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b). The defendant also appeals from the judgment of the habeas court denying in part his amended petition for a writ of habeas corpus. On appeal, the defendant maintains the following claims: (1) the trial court violated

---

[1] For the sake of convenience and clarity, we will refer to Brown solely as the defendant.

his constitutional right to counsel by improperly requiring the defendant to proceed with the probable cause hearing without counsel or an adequate waiver of the right to counsel; (2) the trial court improperly admitted evidence unconstitutionally obtained during a search and seizure for which the state lacked probable cause or a warrant, made consequent to a stop for which the police lacked a reasonable and articulable suspicion; and (3) the habeas court improperly denied his claim that his trial attorney's failure to take certain actions resulted in ineffective assistance of counsel, in violation of his constitutional rights. We affirm the judgments of the trial and habeas courts.

The jury reasonably could have found the following facts. On June 7, 1994, Waterbury police officer Michael DiMaria received an anonymous telephone call informing him that the defendant was selling narcotics in the area of Walnut and Wood Streets in Waterbury. DiMaria and five other officers then drove to that area in two unmarked vehicles to investigate the report. The area to which they proceeded is a high crime area known for heavy narcotics activity. The vehicle that DiMaria was driving, with two other officers as passengers, generally was recognized in the neighborhood as a police vehicle.

DiMaria drove past a small store on Walnut Street, in front of which stood a group of people that included the defendant. As the police vehicle drove past, the people in the group started moving away in different directions. DiMaria testified that such behavior was typical of people carrying narcotics. The defendant separated from the group, walked down Walnut Street and turned onto Wood Street. DiMaria drove through the neighborhood, out of sight of the defendant, to Wood Street, where he parked his vehicle facing the direction in which the defendant was walking. He and the other officers in the vehicle watched the defendant walk

down Wood Street toward the defendant's residence, which was nearby. While the defendant was walking down Wood Street, DiMaria saw him look back over his shoulder repeatedly. DiMaria finally saw the defendant stop walking, reach into his pants pocket, remove a plastic bag and place the plastic bag in his left shoe. DiMaria, who had been with the Waterbury police department for fifteen years and on the narcotics team for five years, had seen such plastic bags many times in the past and recognized them as the type used in the packaging of narcotics.

After seeing the defendant place the bag in his shoe, DiMaria drove the vehicle over to where the defendant was located, and he and the other officers left the vehicle to confront the defendant. DiMaria asked the defendant what he had placed in his shoe. After the defendant denied having placed anything in his shoe, DiMaria instructed the defendant to remove his shoe. When the defendant removed the shoe, the plastic bag fell from the shoe onto the ground. The defendant stepped on the bag, covering it with his foot. DiMaria pushed the defendant backward to force him to move his foot and seized the bag, which contained thirty-two smaller plastic bags, each containing a substance later established to be cocaine. This number of smaller bags of narcotics is inconsistent with possession for personal use. A post-arrest search revealed that the defendant also possessed $112 in small denomination bills, which was consistent with selling narcotics. The area in which the officers observed and arrested the defendant was within 1500 feet of a school.

The following procedural history also is necessary for our resolution of this appeal. The defendant was charged, in an amended information dated October 26, 1995, with one count of possession of a narcotic substance with the intent to sell in violation of § 21a-278 (a) and one count of possession of a narcotic substance

with the intent to sell within 1500 feet of a school in violation of § 21a-278a (b). On August 1, 1994, the trial court, *Kulawicz, J.*, conducted a probable cause hearing, at which the defendant was not represented by counsel, that resulted in the court's finding of probable cause. A subsequent jury trial resulted in a guilty verdict on both counts, and the trial court, *Flynn, J.*, thereafter rendered judgment in accordance with the jury verdict, sentencing the defendant to a total effective term of ten years imprisonment. The defendant did not appeal from the judgment of conviction. He subsequently filed a petition for a writ of habeas corpus, in response to which the habeas court, *Hon. Ronald J. Fracasse*, judge trial referee, reinstated his right to appeal the judgment of conviction, but denied the remainder of the relief requested in the petition. The habeas court also granted the defendant's petition for certification to appeal the habeas court's judgment. The defendant thereafter filed two appeals in the Appellate Court challenging separately the judgment of conviction and the judgment of the habeas court. The Appellate Court granted the defendant's motion to consolidate the appeals and we transferred the consolidated appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

I

We consider first the defendant's claim that the judgment of conviction should be reversed because it resulted from an illegal probable cause hearing. Specifically, the defendant claims that his constitutional right to counsel was violated because he was not represented by counsel during the probable cause hearing and he had not waived his right to counsel. The defendant concedes that he failed to raise a challenge to the probable cause hearing at trial and, therefore, seeks to prevail

on his claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[2]

The state[3] concedes that the trial court improperly conducted the probable cause hearing without either counsel for the defendant or a valid waiver by the defendant of his right to counsel. Nevertheless, the state contends that this impropriety does not require reversal of the conviction because it was rendered harmless by the subsequent conviction of the defendant after a fair trial. We agree with the state.

The following additional undisputed facts are relevant to our resolution of this issue. On August 1, 1994, the defendant appeared before the trial court for a previously scheduled probable cause hearing. The defendant was not represented by counsel. At the court's instruction, the defendant telephoned Mark Kostecki, an attorney who had represented the defendant on another matter, in an unsuccessful attempt to arrange for representation at that day's hearing. The clerk informed the court that "[t]he sixty days expires on Friday," an apparent reference to the statutory requirement that a probable cause hearing be held within sixty days of the filing of the complaint or information, "[u]nless waived by the accused person or extended by the court for good cause shown . . . ." General Stat-

---

[2] The defendant also argues that *Golding* analysis is not necessary because the challenge to the probable cause hearing was preserved sufficiently by the defendant's mention of it at sentencing and by its inclusion in the defendant's habeas petition without objection by the state. We need not determine, however, whether these posttrial attempts were sufficient to preserve the defendant's right to challenge the probable cause hearing. Even if we were to determine that the claim was properly preserved and directly reviewable, without application of *Golding*, the defendant would not prevail because of our conclusion that the defect in the probable cause hearing is subject to harmless error review and was harmless error that does not require reversal of the conviction. See parts I B and C of this opinion.

[3] For purposes of convenience and clarity, we refer to the state and the respondent, the commissioner of correction, jointly as the state.

utes § 54-46a (b). Consequently, the trial court told the defendant that "[w]e'll have to go forward with it one way or the other. If you have a lawyer, fine, if you don't have a lawyer, we are going to have to go forward with the hearing today . . . because the time expires on [August 7], [and we] only have until Friday to have this hearing." When the defendant informed the court that he had been unable to arrange for representation that day, the court responded, "OK. There's no appearance in the file either. They have not filed any appearance for you. You're not represented as of now by any attorney in this particular case. Did you want the public defender or do you just want to go forward with the hearing?" The defendant replied, "I'll go forward." The prosecution then proceeded to examine its only witness at the probable cause hearing, Officer DiMaria, after which the trial court made a finding of probable cause.

In *State* v. *Golding*, supra, 213 Conn. 239–40, this court concluded that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.)

"The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." *State* v. *George B.*, 258 Conn. 779, 784, 785 A.2d 573 (2001). "Because a defendant must satisfy all four of the *Golding* prongs, [t]he appellate tribunal is free . . . to respond to the defendant's claim by focusing on whichever condition is most relevant

in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 716–17 n.86, 888 A.2d 985 (2006).

In this case, the parties focus their claims on the fourth prong of *Golding* and, specifically, whether the defect in the probable cause hearing is subject to harmless error review. The defendant claims that the probable cause hearing is a critical stage of the prosecution and that the denial of counsel at a critical stage constitutes a structural error, which is not subject to harmless error analysis. The state contends that the denial of counsel at the probable cause hearing was a mere procedural error, not a structural error, and is subject to harmless error review. The state further contends that the error was harmless and, accordingly, should not result in the reversal of the judgment of conviction. We agree with the state.

## A

Before analyzing the defendant's claims pursuant to *Golding*, we first consider the state's contention that the defendant's failure to raise at trial the claim that the probable cause hearing was invalid constituted a waiver of that claim, rendering it ineligible for review pursuant to *Golding*. In support of this contention, the state relies on *State* v. *Hafford*, 252 Conn. 274, 309–10, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000), in which this court declined to review the defendant's challenge to the sufficiency of the evidence at the probable cause hearing because he had failed to preserve the claim. In *Hafford*, this court relied upon its prior conclusion in *State* v. *John*, 210 Conn. 652, 665 n.8, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989), that, while a valid determination of probable cause is a prerequisite to the court's jurisdiction to hear the trial, the probable cause requirement implicates the court's personal juris-

diction over the defendant, rather than its subject matter jurisdiction. *State* v. *Hafford*, supra, 309–10. The court then concluded in *Hafford* that, "like other defects relating to jurisdiction of the person, any infirmity in the evidence presented at a probable cause hearing is deemed to be waived if not seasonably raised." (Internal quotation marks omitted.) Id., 310. On that basis, this court declined to consider the defendant's unpreserved claim that the evidence was insufficient to establish probable cause.

This court again held that a defendant could waive his challenge to the finding of probable cause in *State* v. *Reynolds*, 264 Conn. 1, 25–26, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). In *Reynolds*, the defendant claimed that, because the information failed to allege an essential element of the charged offense, the trial court's finding of probable cause pursuant to that information was improper. The court concluded that the defendant had waived the claim by failing to raise it in the trial court because, as the court had stated in *Hafford*, defects in the probable cause hearing implicate the court's personal jurisdiction and challenges to personal jurisdiction are deemed waived if not raised. See also *State* v. *Newsome*, 238 Conn. 588, 597, 682 A.2d 972 (1996) (declining to review unpreserved challenge to evidence at probable cause hearing because such review would "result in a trial by ambuscade of the trial judge" [internal quotation marks omitted]); *State* v. *Niblack*, 220 Conn. 270, 276, 596 A.2d 407 (1991) (unconditional guilty plea constitutes waiver of challenges to probable cause hearing); *State* v. *Ramos*, 201 Conn. 598, 601, 519 A.2d 9 (1986) (consent to reservation to Supreme Court of issue concerning probable cause hearing constitutes waiver of right to challenge timeliness of hearing).

Nevertheless, on at least two occasions, this court has reviewed unpreserved challenges to probable cause

hearings after applying the analysis dictated by *Golding* and its antecedents. In *State* v. *John*, supra, 210 Conn. 662–66, the defendants challenged the admissibility of evidence at the probable cause hearing for the first time on appeal. Arguing that the use of the evidence violated their constitutional rights of confrontation, the defendants sought to prevail under *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), a legal antecedent to *Golding*. Although the court recognized that invalidity in the probable cause hearing implicates the court's personal jurisdiction and therefore "any infirmity in the evidence . . . is deemed to be waived if not seasonably raised"; *State* v. *John*, supra, 665 n.8; the court nonetheless considered the defendants' claim pursuant to *Evans* and concluded that the defendants were not entitled to review because "the record does not demonstrate that either defendant has clearly been deprived of a fundamental constitutional right and a fair trial by the admission of evidence to which no objection was raised until this appeal." (Internal quotation marks omitted.) Id., 664.

This court again applied *Golding* analysis to an unpreserved challenge to a probable cause hearing, without deeming the claim waived, in *State* v. *Santiago*, 245 Conn. 301, 313–16, 715 A.2d 1 (1998). The defendant in that case had argued that the probable cause hearing was invalid because the court had allowed his attorney to waive his right to a probable cause hearing within sixty days of the filing of the complaint or information, without the defendant's consent or presence. See General Statutes § 54-46a (b). While this court ultimately rejected the substance of the defendant's claim, we concluded that it was properly reviewable under *Golding* "[b]ecause the defendant has a constitutional right to a probable cause hearing according to the procedures set forth in § 54-46a, including the right to a hearing

within the statutorily prescribed time period . . . ."
*State* v. *Santiago*, supra, 314–15.

While we note the apparent conflict in the approaches taken by these precedents, we need not determine today whether the defendant's failure to challenge the validity of the probable cause hearing at trial constituted a waiver of that claim, because of the waivable nature of defects in personal jurisdiction, or, conversely, whether such a claim is the proper subject of *Golding* analysis because it necessarily implies a violation of the defendant's constitutional right to a probable cause hearing. We need not resolve this issue because, even if we were to assume that the defendant's claim is entitled to review pursuant to *Golding*, we conclude that he cannot prevail.

### B

We consider first whether the deprivation of counsel at the probable cause hearing constituted a structural error not subject to harmless error review or a procedural error for which harmless error review is proper. We conclude that it was a procedural error subject to harmless error review.

"Since *Chapman* v. *California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), the United States Supreme Court has repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. *Delaware* v. *Van Arsdall*, 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); *Rose* v. *Clark*, 478 U.S. 570, 576, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986). Despite the strong interests that support the harmless-error doctrine, the [c]ourt in *Chapman* recognized that some constitutional errors require reversal without regard to the evidence in the particular case. . . . Errors that are not subject to

harmless error analysis go to the fundamental fairness of the trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Gerardi*, 237 Conn. 348, 361–62, 677 A.2d 937 (1996). "Structural [error] cases defy analysis by harmless error standards because the entire conduct of the trial, from beginning to end, is obviously affected . . . . Put another way, these errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair." (Internal quotation marks omitted.) *State* v. *Latour*, 276 Conn. 399, 410, 886 A.2d 404 (2005).

This court has found error to be structural only when the error "renders a trial fundamentally unfair and is not susceptible to a harmless error analysis . . . ." (Internal quotation marks omitted.) Id., 411. For example, in *State* v. *Peeler*, 265 Conn. 460, 475–76, 828 A.2d 1216 (2003), cert. denied, 541 U.S. 1029, 124 S. Ct. 2094, 158 L. Ed. 2d 710 (2004), we concluded that the improper denial of the defendant's constitutional right to counsel of choice during the trial was not subject to harmless error review because it constituted a fundamental component of the sixth amendment right to a fair trial. In *State* v. *Murray*, 254 Conn. 472, 499, 757 A.2d 578 (2000), we concluded that the improper substitution of an alternate juror after deliberations had commenced constituted structural error because of "[t]he inability to assess the effect of this impropriety on the defendant's trial . . . ." In most cases involving constitutional violations, however, this court applies harmless error analysis. See, e.g., *State* v. *Carpenter*, 275 Conn. 785, 832–33, 882 A.2d 604 (2005) (admission of statements in violation of constitutional right to confrontation was harmless error), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006); *State* v. *Padua*, 273 Conn. 138, 166–67, 869 A.2d 192 (2005) (although

improper jury instruction violated due process rights, error harmless); *State* v. *Montgomery*, 254 Conn. 694, 715–18, 759 A.2d 995 (2000) (admission of evidence concerning defendant's silence was harmless error despite violation of due process rights).

Article first, § 8, of the constitution of Connecticut was amended in 1982 to guarantee the right to a probable cause hearing to those charged with crimes punishable by death or life imprisonment.[4] "[T]his new provision guarantees that no one will be forced to stand trial for a serious crime unless a court has first made a finding of probable cause at an open hearing in which the accused is provided with a full panoply of adversarial rights." *State* v. *Mitchell*, 200 Conn. 323, 330, 512 A.2d 140 (1986).

This court has not considered whether the denial of counsel at a probable cause hearing constitutes a structural error, thereby foreclosing consideration of prejudice to the defendant. The United States Supreme Court has considered this issue for a violation of the federal constitutional right to counsel. In *Coleman* v. *Alabama*, 399 U.S. 1, 10–11, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970), the court determined that the preliminary hearing provided by Alabama statutory law was a " 'critical stage' " in the proceedings during which the defendants were entitled to counsel under the federal constitution and that the denial of counsel at the preliminary hearing had violated the defendants' constitutional rights. Id., 7–10. Nevertheless, the court concluded that the convictions were not subject to automatic reversal. The court remanded the case to the

---

[4] Article first, § 8 (a), of the Connecticut constitution, as amended by articles seventeen and twenty-nine of the amendments, provides in relevant part: "No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law, except in the armed forces, or in the militia when in actual service in time of war or public danger."

state courts for consideration of whether the denial of counsel was harmless error. Id., 10–11.[5]

Although this court has not considered whether the denial of counsel at a probable cause hearing is subject to harmless error review, it has applied harmless error review to a failure by the prosecution to disclose exculpatory evidence at the probable cause hearing. In *State v. McPhail*, 213 Conn. 161, 170, 567 A.2d 812 (1989), this court concluded that the state's failure to disclose exculpatory evidence would not result in the reversal of the conviction unless "the nondisclosure did in fact taint the defendant's subsequent prosecution." Because the exculpatory statements were disclosed to the defendant prior to trial and were fully available to him for use at trial, the court concluded that "the failure of the state to disclose exculpatory evidence at the probable cause hearing did not deprive the defendant of his constitutional right to a fair trial and thus was harmless beyond a reasonable doubt." Id., 171; see also *State v. Ortiz*, 252 Conn. 533, 547–48, 747 A.2d 487 (2000) (even

[5] We note that, since *Coleman*, the United States Supreme Court has indicated in dicta that denial of counsel at a critical stage renders a trial unfair, without regard to actual prejudice. See, e.g., *Roe v. Flores-Ortega*, 528 U.S. 470, 483, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000); *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). At no point, however, has the court overruled explicitly *Coleman* or repudiated its conclusion that the case should be remanded for harmless error analysis, despite the denial of counsel at the preliminary hearing. In fact, several Circuit Courts have rejected the argument that such dicta impliedly overruled *Coleman*. See, e.g., *United States v. Owen*, 407 F.3d 222, 226–29 (4th Cir. 2005) (reasoning that court applied narrow meaning of "critical stage" in dicta and broad meaning in *Coleman*), cert. denied, 546 U.S. 1098, 126 S. Ct. 1026, 163 L. Ed. 2d 867 (2006); *Tisthammer v. Williams*, 49 Fed. Appx. 757, 763 n.3 (10th Cir. 2002) (rejecting argument that *Cronic* impliedly overruled *Coleman*), cert. denied, 538 U.S. 928, 123 S. Ct. 1579, 155 L. Ed. 2d 322 (2003); *Hammonds v. Newsome*, 816 F.2d 611, 613 (11th Cir. 1987) (per curiam) (harmless error analysis still applicable to deprivation of counsel at preliminary hearing, despite dicta); *Takacs v. Engle*, 768 F.2d 122, 124 (6th Cir. 1985) (same). We agree with these federal courts that *Coleman* continues to govern this area of federal constitutional law.

if probable cause hearing tainted by nondisclosure of evidence, error harmless because no deprivation of constitutional right to fair trial); *State* v. *McIntyre*, 242 Conn. 318, 325, 699 A.2d 911 (1997) (improper nondisclosure prior to probable cause hearing, if any, rendered harmless by conviction after full and fair trial); cf. *State* v. *White*, 229 Conn. 125, 139–40, 640 A.2d 572 (1994) (defendants deprived of constitutional right to fair trial because nondisclosure of evidence at probable cause hearing hindered presentation of defense at trial and, "[a]lthough the state's [nondisclosure] would have been considered harmless error had it not impaired the fairness of the defendants' trial . . . our reversal of the convictions requires a new hearing on probable cause to be held" [citation omitted]).

In fact, this court has required the automatic reversal of a conviction due to error at the probable cause hearing only when the error was a lack of sufficient evidence to justify the finding of probable cause. In *State* v. *Boyd*, 214 Conn. 132, 141–42, 570 A.2d 1125 (1990), on appeal after remand, 221 Conn. 685, 607 A.2d 376, cert. denied, 506 U.S. 923, 113 S. Ct. 344, 121 L. Ed. 2d 259 (1992), the court acknowledged that the defendant had been convicted after a fair trial, but nevertheless reversed the conviction because there had been insufficient evidence presented at the probable cause hearing to support the trial court's finding of probable cause. The court based its decision on its prior determination in *State* v. *Mitchell*, supra, 200 Conn. 334, that a valid finding of probable cause is "a jurisdictional prerequisite to continuing prosecution." This court also relied upon the conclusion in *State* v. *McPhail*, supra, 213 Conn. 170, that "implicit in our decision [in *Mitchell*] was an understanding that, at the very least, insufficiency of the evidence presented at the probable cause hearing will deprive the trial court of jurisdiction over the person of the defendant, thus

rendering moot any subsequent prosecution and conviction."[6]

We conclude that the deprivation of counsel at a probable cause hearing is the type of error that properly may be subject to harmless error analysis. The denial of this constitutional right, while significant, as is every constitutional violation, does not constitute the type of constitutional error that requires automatic reversal. This court has found error to be structural only when

[6] Since deciding *Boyd*, this court has been invited on numerous occasions, including the present appeal, to reconsider its precedent concerning the impact of error at a probable cause hearing on the subsequent prosecution. See, e.g., *State* v. *Munoz*, 233 Conn. 106, 128 n.12, 659 A.2d 683 (1995) (rejecting defendant's challenges to probable cause hearing and therefore declining to reconsider holdings that flawed probable cause hearing deprives court of personal jurisdiction over defendant); *State* v. *Greenfield*, 228 Conn. 62, 74 n.13, 634 A.2d 879 (1993) (declining to reconsider and overrule *State* v. *Mitchell*, supra, 200 Conn. 323, because trial court properly found probable cause).

In *State* v. *Sinchak*, 247 Conn. 440, 721 A.2d 1193 (1999), the court initially had granted the defendant's petition for certification asking the court to overrule *State* v. *McPhail*, supra, 213 Conn. 161, but subsequently determined that certification on the issue was improvidently granted because "[t]he rule of [*McPhail*] best would be addressed in conjunction with the rules set forth in *State* v. *Boyd*, [supra, 214 Conn. 132], and *State* v. *Mitchell*, [supra, 200 Conn. 323]. The continued validity of the rules of *Boyd* and *Mitchell*, however, was not certified and, therefore, not briefed or argued in this case." *State* v. *Sinchak*, supra, 441–42; see also *State* v. *Ortiz*, supra, 252 Conn. 548 n.15 (declining to consider defendants' argument that *McPhail* should be overruled because, as in *Sinchak*, the issue was not raised in conjunction with arguments for reconsideration of *Boyd* and *Mitchell*).

Once again, we decline to accept the state's invitation to reconsider the automatic reversal rule articulated in *Boyd*. The state raised this alternative claim without analysis in a footnote. We therefore conclude that the claim was not adequately briefed. See *Margolin* v. *Kleban & Samor, P.C.*, 275 Conn. 765, 771 n.6, 882 A.2d 653 (2005) (analysis required to avoid abandoning issue by failure to brief properly). Moreover, this appeal involves the denial of counsel at a probable cause hearing rather than insufficiency of evidence, and we conclude that such a claim is subject to harmless error analysis pursuant to *McPhail*, rather than automatic reversal pursuant to *Boyd*. Thus, we have no cause to revisit the court's conclusion in *Boyd* that findings of probable cause based on insufficient evidence will void a subsequent conviction, without regard to the fairness of the trial.

the error "renders a trial fundamentally unfair and is not susceptible to a harmless error analysis . . . ." (Internal quotation marks omitted.) *State* v. *Latour*, supra, 276 Conn. 411. In fact, the error in the present case is susceptible to harmless error analysis. A defendant might be able to develop and prove specific claims of trial prejudice as a result of the lack of counsel at the probable cause hearing, such as inadequate examination or cross-examination of witnesses at the probable cause hearing that resulted in unavailability evidence for use at trial, loss of an opportunity to impeach witnesses at trial, or the hindrance of full preparation or presentation of the defendant's case at trial. See *Coleman* v. *Alabama*, supra, 399 U.S. 9 (listing specific examples of prejudice that may result from lack of counsel at preliminary hearing).

In *State* v. *White*, supra, 229 Conn. 138–39, this court considered similar issues in the analogous situation of nondisclosure of evidence and determined that the prejudice to the defendant required reversal of the conviction. In *White*, the state failed to disclose exculpatory material at the probable cause hearing, ultimately revealing the information after jury selection had begun. As a result of this delay, two potential witnesses became unavailable and the defendants were unable to interview them or otherwise secure their potentially exculpatory evidence for use at trial. Id. This loss of access to potential witnesses, combined with the overall weakness of the prosecution's case, led the court to conclude that there was a reasonable probability that the outcome of the trial would have been different had the state disclosed the exculpatory information in a timely manner. Id., 139. Accordingly, the convictions were reversed. Id.

In the present case, any prejudice that the defendant may have suffered in the presentation of his defense as a result of the denial of counsel at the probable cause

hearing is similarly discernible upon appeal. Like the nondisclosure of exculpatory evidence at the probable cause hearing, the deprivation of counsel at such a hearing does not render the proceedings so fundamentally unfair as to constitute one of the "rare exceptions to the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Mebane*, 204 Conn. 585, 605, 529 A.2d 680 (1987) (*Shea, J.*, concurring), quoting *Delaware* v. *Van Arsdall*, 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986), cert. denied, 484 U.S. 1046, 108 S. Ct. 784, 98 L. Ed. 2d 870 (1988).

C

We therefore consider next whether the error in the present case resulted in prejudice to the defendant, noting that the state bears the burden of proving that the constitutional impropriety was harmless beyond a reasonable doubt. See *State* v. *Estrella*, 277 Conn. 458, 477, 893 A.2d 348 (2006); *State* v. *Faust*, 237 Conn. 454, 470, 678 A.2d 910 (1996). The state contends that the trial record reveals no connection between the lack of counsel at the probable cause hearing and the defendant's conviction. The state further contends that Kostecki, the defendant's trial attorney, disavowed any such prejudice in his testimony at the habeas proceeding by his testimony that he generally advised his clients to waive their right to a probable cause hearing and that he did not encounter any difficulties in presenting the defense. Finally, the state contends that the defendant was not disadvantaged in his trial preparations by his attorney's absence at the probable cause hearing because Kostecki had access to a transcript of the proceeding prior to trial.

The defendant claims that the lack of counsel at the probable cause hearing resulted in harm to him in two

ways. First, the defendant claims that he lost the opportunity to cross-examine DiMaria meaningfully and thereby create a record for impeachment at trial. Second, the defendant claims that his attorney's cross-examination of DiMaria at trial was impacted negatively because he was less prepared than he would have been had he been present at the hearing.

Our careful review of the record does not reveal any prejudice to the defendant from the loss of opportunity to cross-examine DiMaria at the probable cause hearing. Although the defendant refers to "discrepancies" between DiMaria's testimony at the hearing and his testimony at trial, the defendant does not identify specifically any inconsistencies or contradictions. The transcript of DiMaria's testimony at the hearing contains no evidence of the type of inconsistency or confusion that might have been exploited at the hearing through effective cross-examination and subsequently used at the trial to impeach DiMaria's testimony.

Although we perceive no inconsistencies in DiMaria's testimony, we do note that DiMaria's testimony at trial included details to which he had not testified at the probable cause hearing.[7] It is possible that, had the defendant's attorney been present at the hearing, his cross-examination of DiMaria might have led DiMaria to disclose some of these additional details at the hearing. On the basis of our review of the record, however, we conclude that these details were not critical to the prosecution and that the defendant was not prejudiced by the delay in knowing these particulars of DiMaria's testimony.

---

[7] For example, DiMaria testified at trial that an anonymous telephone call had led him and the other officers to conduct an investigation in the neighborhood in which they arrested the defendant and that he had witnessed the defendant standing in a group that dispersed when the police officers drove by. At trial, DiMaria further testified that he had seen the defendant look over his shoulder as he walked down the street.

Similarly, the record reveals no evidence that the defendant's attorney was prejudiced in his ability to prepare for cross-examination of DiMaria by his absence at the probable cause hearing. The transcript of the probable cause hearing was available to and reviewed by the defendant's attorney prior to his cross-examination of DiMaria. Moreover, Kostecki, testified at the habeas trial that the defendant's lack of counsel at the probable cause hearing did not cause him concern and that no difficulties or problems hindered his presentation of a defense at trial.

Thus, we conclude that the deprivation of the defendant's constitutional right to counsel at the probable cause hearing did not prejudice his defense at trial or taint his conviction. Because the record is devoid of any indication that the defendant was harmed by the constitutional violation, we conclude that the deprivation of counsel at the probable cause hearing was harmless beyond a reasonable doubt.

## II

We next consider the defendant's claim that the trial court improperly denied his motion to suppress the drug evidence. Specifically, the defendant claims that he was stopped and searched without a reasonable and articulable suspicion and that the plastic bag containing narcotics was seized without probable cause or a warrant in violation of the fourth amendment to the United States constitution.[8] The state counters that the circum-

---

[8] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The fourth amendment right to be free from unreasonable searches and seizures is made applicable to the states by incorporation through the due process clause of the fourteenth amendment. See *Mapp* v. *Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

The defendant does not claim on appeal that the police violated his rights under the state constitution and, thus, we decide the issues raised by this

stances were sufficient to justify the stop and, further, the police legally seized the bag without a warrant because one of them saw the bag in plain view and reasonably concluded that it likely contained narcotics. We agree with the state.

"As an initial matter, we note that [o]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Pierre*, 277 Conn. 42, 92, 890 A.2d 474 (2006).

"Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . The trial court's determination on the issue, therefore, is subject to plenary review on appeal. . . . Because a trial court's determination of the validity of a . . . search [or seizure] implicates a defendant's constitutional rights . . . we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . However, [w]e [will] give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 42–43, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004).

appeal solely pursuant to federal constitutional law. See *State* v. *Reid*, 277 Conn. 764, 772 n.10, 894 A.2d 963 (2006) (court will not entertain state constitutional claim unless separately briefed and analyzed).

In the present case, the defendant's oral motion to suppress came in the form of an objection to the state's offer of the narcotics as evidence at trial. The defendant argued in part that the evidence was obtained as the result of an unconstitutional stop and search. In deciding the motion, the court made the following findings of fact and legal conclusions: "[T]he court finds here there was an investigation that proceeded in the area of 264 Walnut Street, which was a high narcotics traffic area. The defendant was known to the police from previous police business and past investigations. The police saw the defendant with others when they went to the scene after getting a call that there was trafficking in narcotics going on there. The persons they saw there when they drove by immediately broke up and went in different directions, that that conduct was typical of traffickers in narcotics when the police arrived, that the police witnessed the defendant put a package in plain view by removing it from his pocket and then putting it in his left shoe.

"The officers' training and knowledge was that packages of the color and size ultimately seized were similar to packages that narcotics are kept in. The defendant waited until he was on another street to put the narcotics in his shoe. The officer saw him take it. He saw that it was in a plastic bag when it was removed from the pants pocket.

"[The defendant] said he didn't put anything in his shoe when DiMaria had seen him do so. There was an exigency, I think, there in that if this type of contraband was not then seized, if they waited to go get a warrant, it could have been secreted or destroyed and further, I don't see any violation of the fourth amendment in the way the police arrived at the place from which the envelope, the glassine envelope could be viewed because it was on a public street and DiMaria and the other police had the right to be there.

"Given all the circumstances, I find also that the incriminating nature of the evidence in this envelope they saw him put in his shoe was immediately apparent. It was a high narcotics area, they had a call that narcotics [were] being sold there. They recognized this person. They knew him. After he left and went around the block, he put this plastic envelope from his pocket to his shoe. Common sense would tell any of us that we don't normally keep envelopes of any kind in our shoes."

The defendant challenges not the trial court's factual findings but, rather, its legal conclusions that the actions of the police constitutionally were valid. These conclusions are subject to plenary review. See *State* v. *Hammond*, 257 Conn. 610, 616, 778 A.2d 108 (2001).

A

We consider first the defendant's claim that the police subjected him to an illegal stop. Ordinarily, "[w]hen considering the validity of a . . . stop, our threshold inquiry is twofold. . . . First, we must determine at what point, if any, did the encounter between [the police officer] and the defendant constitute an investigatory stop or seizure. . . . Next, [i]f we conclude that there was such a seizure, we must then determine whether [the police officer] possessed a reasonable and articulable suspicion at the time the seizure occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Santos*, 267 Conn. 495, 503, 838 A.2d 981 (2004).

In the present case, the parties agree that the defendant was detained by the police at some time prior to the removal of his shoe, but they do not agree as to when precisely the stop began. The state claims that the defendant was not detained until after he denied having placed an object in his shoe. The defendant contends that the stop arose as soon as he was confronted by the three police officers. We need not resolve this question because, even if the stop occurred when

the defendant first was confronted by the officers, as the defendant contends, we conclude that the officers possessed at that time a reasonable and articulable suspicion sufficient to justify a detention of the defendant for investigative purposes.

"The federal law of search and seizure in this area is well settled. The fourth amendment to the federal constitution, made applicable to the states through the due process clause of the fourteenth amendment, provides in relevant part that [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . . Certain seizures are reasonable under the fourth amendment even in the absence of probable cause if there is a reasonable and articulable suspicion that a person has committed or is about to commit a crime. *Florida* v. *Royer*, 460 U.S. 491, 498, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); *Terry* v. *Ohio*, [392 U.S. 1, 24, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)] . . . . When a reasonable and articulable suspicion exists, the detaining officer may conduct an investigative stop of the suspect in order to confirm or dispel his suspicions." (Citations omitted; internal quotation marks omitted.) *State* v. *Wilkins*, 240 Conn. 489, 495, 692 A.2d 1233 (1997).

"In determining whether a detention is justified in a given case, a court must consider if, relying on the whole picture, the detaining officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity. When reviewing the legality of a stop, a court must examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom." *State* v. *Lipscomb*, 258 Conn. 68, 75–76, 779 A.2d 88 (2001).

In the present case, when the police approached the defendant, they possessed sufficient information to give

rise to a particularized and objective basis for suspecting the defendant of criminal activity. As the trial court found, they had received an anonymous tip that specifically indicated that narcotics were being sold on that day in that location, which was a high trafficking area for narcotics. Although an anonymous tip alone is insufficient to justify an investigatory stop, it may contribute, in combination with other evidence, to a reasonable suspicion for such a stop. "In the context of an anonymous tip, as in this case, a totality of the circumstances test is used, requiring independent police investigation to corroborate details because [u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated . . . an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity . . . . As we have recognized, however, there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." (Citations omitted; internal quotation marks omitted.) *State* v. *Hammond*, supra, 257 Conn. 617, quoting *Florida* v. *J. L.*, 529 U.S. 266, 270, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000).

The trial court found that the investigation by the police in this case yielded evidence corroborative of the claim by the anonymous caller. Specifically, the police observed the defendant standing in a group in the area identified by the caller as the location of the illegal drug sales. When the police drove past the group, the individuals, including the defendant, walked away in different directions in a manner that was typical of drug traffickers. The defendant turned onto another street, away from the police. Subsequently, he stopped walking and transferred a plastic bag from his pants pocket to his shoe. In so doing, he placed the bag in plain view, allowing DiMaria to see the bag and identify

it as the type of bag in which illegal narcotics typically are packaged for sale.

Thus, through their investigation, the officers were able to develop evidence that corroborated the anonymous tip and gave rise to a reasonable and articulable suspicion that the defendant was involved in criminal activity. Although the police did not witness the defendant engage in the sale of narcotics, as we previously have stated, "[a]n investigative stop can be appropriate even where the police have not observed a violation because a reasonable and articulable suspicion can arise from conduct that alone is not criminal." (Internal quotation marks omitted.) *State* v. *Lipscomb*, supra, 258 Conn. 76. We conclude, in light of the totality of the circumstances, that the trial court properly concluded that the officers had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Internal quotation marks omitted.) Id., quoting *United States* v. *Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981).

B

We next consider the defendant's argument that the police illegally searched the defendant and seized his property without a warrant or probable cause when DiMaria instructed the defendant to remove his shoe and then seized the bag that fell from it. The state contends that DiMaria instructed the defendant to remove his shoe in order to retrieve the bag, which DiMaria previously had seen in plain view. This retrieval of the bag did not constitute an invasion of privacy and therefore did not constitute a search, the state avers, because the defendant had exposed the bag to public view before putting it in his shoe. The state further avers that DiMaria was justified in seizing the bag from the defendant's shoe because, on the basis of his prior

view of the bag, DiMaria had probable cause to believe that it contained contraband. We agree with the state.

The fourth amendment requires that searches and seizures be made upon probable cause pursuant to a warrant. See footnote 8 of this opinion. These requirements are "subject only to a few specifically established and well-delineated exceptions." (Internal quotation marks omitted.) *State* v. *Badgett,* 200 Conn. 412, 423, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). "In *Coolidge* v. *New Hampshire,* 403 U.S. 443, 464–73, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), the United States Supreme Court articulated what has become known as the plain view exception to the warrant requirement. The warrantless seizure of contraband that is in plain view is reasonable under the fourth amendment if two requirements are met: (1) the initial intrusion that enabled the police to view the items seized must have been lawful; and (2) the police must have had probable cause to believe that these items were contraband or stolen goods." (Internal quotation marks omitted.) *State* v. *Eady,* 249 Conn. 431, 436–37, 733 A.2d 112 (1999), cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999).

"As the United States Supreme Court stated in *Illinois* v. *Andreas,* 463 U.S. 765, 772, 103 S. Ct. 3319, 77 L. Ed. 2d 1003 (1983), [t]he plain view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy." (Internal quotation marks omitted.) *State* v. *Eady,* supra, 249 Conn. 444. "[I]f contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no search within the meaning of the [f]ourth [a]mendment—or at least no search independent of the initial intrusion that

gave the officers their vantage point." (Internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 287 n.35, 764 A.2d 1251 (2001).

Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." (Internal quotation marks omitted.) Id. In this case, there is no question that the police were lawfully in the position from which DiMaria watched the defendant transfer the plastic bag from his pants to his shoe. They were parked legally on a public street observing the defendant walk in plain view down a public sidewalk. Moreover, as we previously have determined, the police legally were justified in approaching the defendant and detaining him. See part II A of this opinion.

The remaining question is whether the incriminating character of the bag was immediately apparent to DiMaria. "The police meet the immediately apparent requirement if, [up]on discovery, they have probable cause to associate the property in plain view with criminal activity without further investigation." (Internal quotation marks omitted.) *State* v. *Montgomery*, supra, 254 Conn. 706. "We consistently have held that [t]he quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction. . . . While probable cause requires more than mere suspicion . . . the line between mere suspicion and probable cause necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *Eady*, supra, 249 Conn. 439–40.

The trial court found that DiMaria had seen the defendant remove a plastic bag from his pants pocket and

place it in his shoe. The trial court also credited DiMaria's testimony that such plastic bags are the type used in the packaging of narcotics. Further, an anonymous informant had indicated that the sale of narcotics was taking place on that day in that area and when the police had approached the group of people with whom the defendant was standing, the defendant had begun to move away from the group in a manner that was consistent with drug dealing. Finally, the defendant placed the plastic bag in his shoe, a location in which, as the trial court noted, one does not typically place ordinary objects. These facts were sufficient to establish "probable cause to associate the property in plain view with criminal activity without further investigation."[9] (Internal quotation marks omitted.) *State* v. *Montgomery*, supra, 254 Conn. 706. "It is axiomatic that [t]he probable cause test . . . is an objective one. . . . [See] *Maryland* v. *Macon*, 472 U.S. 463, 470–71, 105 S. Ct. 2778, 86 L. Ed. 2d 370 (1985) ([w]hether a [f]ourth [a]mendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time . . . and not on the officer's actual state of mind at the time the challenged action was taken . . . )." (Citations omitted; internal quotation marks omitted.) *State* v. *Eady*, supra, 249 Conn. 440–41. On the basis of this evidence, an officer reasonably could conclude that the plastic bag contained narcotics. Although one could not

---

[9] Although we note that the defendant's denial that he placed an object in his shoe is further evidence that the bag contained contraband, we do not consider that fact in determining whether the police possessed probable cause to seize the bag because the federal plain view doctrine requires that, upon viewing the object, its incriminating nature must be apparent immediately without further investigation. See *State* v. *Clark*, supra, 255 Conn. 287–88 n.35, quoting *Minnesota* v. *Dickerson*, 508 U.S. 366, 375, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993). Thus, we limit our analysis to the question of whether, at the moment of viewing the bag as it was transferred from the defendant's pocket to his shoe, DiMaria possessed probable cause to believe that it contained narcotics.

know with absolute certainty under these circumstances that the bag contained contraband, "[t]he probable cause determination is, simply, an analysis of probabilities. . . . The determination is not a technical one, but is informed by the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." (Internal quotation marks omitted.) Id., 440. "The existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence. . . . Furthermore, we have concluded that proof of probable cause requires less than proof by a preponderance of the evidence." (Citations omitted; internal quotation marks omitted.) Id.

Thus, we conclude that the defendant's exposure of the bag to the plain view of DiMaria deprived him of a reasonable expectation of privacy in that bag and permitted DiMaria, upon probable cause, to seize the bag without a warrant consistent with the requirements of the fourth amendment. In order to effect that seizure, DiMaria instructed the defendant to remove his shoe, allowing DiMaria to retrieve the bag after it fell out of the shoe onto the ground. We reject the defendant's claim that DiMaria's order to the defendant constituted a search. DiMaria already had taken advantage of the opportunity to view the bag that was presented to him by the defendant's decision to expose the bag to public inspection. Public exposure of an object deprives the owner of a reasonable expectation of privacy in the object and, accordingly, police observation of an object that is in plain view does not constitute a search for the purposes of the fourth amendment. *State* v. *Clark*, supra, 255 Conn. 287–88 n.35. In this case, DiMaria did not need to order the defendant to remove his shoe for the purpose of viewing the bag because, on the basis of his prior view of the bag, he already possessed probable cause to believe that the bag contained contraband.

Where plain view observation leads to probable cause, the United States constitution permits the police to seize, without a warrant, the observed item. Id. DiMaria's order to the defendant to remove his shoe was the means by which DiMaria effected the seizure that he lawfully was entitled to make.[10]

### III

Finally, we turn to the defendant's claim that the habeas court improperly rejected his claims of ineffective assistance of counsel. The defendant asserts that his state and federal constitutional rights to effective assistance of counsel were violated because his trial attorney, Kostecki, failed to file a pretrial motion to suppress the narcotics evidence and failed to prepare adequately for cross-examination of DiMaria.[11] The state responds that the defendant suffered no prejudice from Kostecki's failure to file a pretrial motion to suppress because the motion was made orally during the trial and that a pretrial motion to suppress likely would have required the defendant to testify, which may have been strategically unsound. The state further responds that the record does not support the defendant's claim that Kostecki failed to prepare for cross-examination of DiMaria. We agree that the defendant has failed to prove that he suffered prejudice from his trial counsel's failure to file a pretrial motion to suppress and that the record does not support the claim that Kostecki failed to prepare adequately.

[10] The parties do not raise, nor do we consider, whether, under the facts of this case, the police would have been justified in searching the defendant's shoe. The circumstances make clear that when DiMaria instructed the defendant to remove his shoe, his purpose was to retrieve the bag of narcotics and not to conduct a search of the defendant's shoe.

[11] We consider the defendant's claim in accordance with federal precedent, having previously held that "the state and federal constitutional standards for review of ineffective assistance of counsel claims are identical." *Aillon* v. *Meachum*, 211 Conn. 352, 355–56 n.3, 559 A.2d 206 (1989).

"We begin our discussion by noting that the effectiveness of an attorney's representation of a criminal defendant is a mixed determination of law and fact that . . . requires plenary review . . . . The sixth amendment to the United States constitution guarantees a criminal defendant the assistance of counsel for his defense. U.S. Const., amend. VI. It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Citations omitted; internal quotation marks omitted.) *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 458, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006).

The defendant first claims that Kostecki improperly failed to file a motion to suppress the narcotics evidence before the trial began. We need not determine whether Kostecki's failure to file a pretrial motion to suppress constituted professional error because we conclude that the defendant cannot demonstrate that he was prejudiced by Kostecki's failure to do so. See *Aillon* v. *Meachum*, 211 Conn. 352, 362, 559 A.2d 206 (1989) ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient preju-

dice . . . that course should be followed." [Internal quotation marks omitted.]). Kostecki made an oral motion during the trial that sought the suppression of the evidence and the trial court ruled on the substance of that motion. The defendant has been able to challenge that ruling through the exercise of his appellate rights. See part II of this opinion. The defendant does not challenge Kostecki's performance in the course of raising and arguing the motion. The defendant contends solely that Kostecki should have presented the motion for the trial court's consideration before the trial began. The defendant has not articulated, and we fail to perceive, any prejudice suffered by him from the delay in the court's consideration of the admissibility of the narcotics evidence. Furthermore, we must reject the defendant's claim that a motion to suppress likely would have been granted if presented before the trial. The timing of the motion could have no effect on the facts underlying DiMaria's decision to seize the narcotics and, as we explain in part II of this opinion, the trial court properly determined, based on the circumstances of this case, that the narcotics evidence was not illegally seized and should not be suppressed.

The defendant next contends that Kostecki failed to prepare adequately for his cross-examination of DiMaria because Kostecki did not obtain a copy of the transcript of the probable cause hearing prior to the commencement of the trial. The record indicates that the portion of the transcript that contained DiMaria's testimony comprised seven pages; and that Kostecki had read and reviewed a copy of the transcript in advance of the trial. Kostecki obtained his own copy of the transcript at the beginning of the trial, prior to the commencement of the state's case. On the basis of this factual record, we cannot conclude as a matter of law that Kostecki was unable to prepare adequately because of lack of access to the transcript. If Kostecki's

access had been less than adequate to prepare for cross-examination, we would expect the record to indicate some deficiency in Kostecki's performance resulting from that delay. The defendant points to no such deficiency nor do we perceive any. Thus, we conclude that the defendant has failed to prove that Kostecki's performance was inadequate or that he was prejudiced by the alleged incompetence. See *Aillon* v. *Meachum,* supra, 211 Conn. 368–69 (rejecting claim of ineffective assistance of counsel when defendant failed to show specifically how attorney failed to prepare witness and what impact proper preparation would have had on trial).

The judgments are affirmed.

In this opinion the other justices concurred.