STATE OF CONNECTICUT *v.* EVERTON K.
STEPHENSON
(AC 26332)

Bishop, McLachlan and Rogers, Js.

Argued November 17, 2006—officially released February 13, 2007

*Robert J. McKay,* for the appellant (defendant).

*Jessica Probolus,* special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Lisa Herskowitz,* senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Everton K. Stephenson, appeals from the judgment of conviction rendered by the trial court following his conditional plea of nolo

contendere to the charge of possession of a controlled substance with the intent to sell in violation General Statutes § 21a-277 (b). On appeal, the defendant claims that the court improperly denied his motion to suppress the incriminating statements that he made to police because the statements were involuntarily made and given without a knowing, voluntary and intelligent waiver of his *Miranda*[1] rights. We affirm the judgment of the trial court.[2]

The following facts and procedural history are relevant to our disposition of the defendant's appeal. On September 15, 1999, the statewide narcotics task force intercepted more than thirteen pounds of marijuana shipped to Manchester from San Diego, California. The task force ascertained the contents of the package and attempted a controlled delivery to the listed Manchester address. Maureen Stephenson, the defendant's wife, answered the front door. The officer asked if she was

---

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] We decline to review three additional claims that the defendant has raised in his appeal. First, the defendant claims that the warrantless search of his home was constitutionally invalid. The defendant, however, waived this claim at oral argument. The second claim that we do not review is the defendant's claim that his motion to dismiss should have been granted. We do not review that claim because of his failure to brief the issue adequately. See *Valentine* v. *LaBow*, 95 Conn. App. 436, 452, 897 A.2d 624, cert. denied, 280 Conn. 933, 909 A.2d 963 (2006). The final claim that we do not review is the defendant's claim that the statements he made at the Manchester police department after he was arrested should have been suppressed because the officers failed to provide him with new *Miranda* warnings and that his statements were irrelevant and overly prejudicial. The defendant cannot prevail on this claim, however, because the court ruled in his favor and deemed the statements to be inadmissible. Therefore, the defendant was not aggrieved, regardless of the merits of his constitutional claim, because these statements were not used against him.

Because the court ruled in the defendant's favor and granted him the relief he is presently requesting, he is not aggrieved by the court's decision and, therefore, cannot obtain review of this claim. See *State* v. *Sanders*, 86 Conn. App. 757, 763–64, 862 A.2d 857 (2005) (proof of aggrievement is essential prerequisite to court's jurisdiction of subject matter of appeal).

expecting a package from California. She responded that the defendant was expecting a package. The officer then pointed to the fictitious name on the package's label and inquired if it was that of the defendant, to which she responded in the affirmative. The officer then placed the package on the porch floor and had her sign the package release form.

The officer then gave a prearranged signal, and several officers entered the house. The first officer to enter immediately handcuffed the defendant, placed him on a couch and put him under guard. During the ensuing search, which lasted for at least one hour, the defendant initiated general conversation with the officer supervising him, Detective Ian Case. Shortly after the search began, Case informed the defendant of his *Miranda* rights and told the defendant that he did not have to speak to him if he did not want to, but if he wanted to, he would listen. The defendant then indicated to Case that he understood his *Miranda* rights. Shortly thereafter, the defendant accepted responsibility for the package mailed from California and the evidence found in the home. The officers then arrested the defendant and transported him to the Manchester police department.

The defendant was charged by substitute information with sale of illegal drugs by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of more than four ounces of marijuana in violation of General Statutes § 21a-279 (b), attempt to possess more than four ounces of marijuana in violation of General Statutes §§ 21a-279 (b) and 53a-49, possession of a controlled substance with the intent to sell in violation of § 21a-277 (b) and possession of less than four ounces of marijuana in violation of General Statutes § 21a-279 (c). The defendant filed a motion to suppress certain statements he made to the police and any evidence recovered from his home and a motion to

dismiss the charges. The court conducted a combined trial and suppression hearing. In its memorandum of decision, the court denied the defendant's motion to dismiss and denied in part and granted in part his motion to suppress. Subsequently, and before the court rendered a finding of guilt or innocence, the defendant entered a plea of nolo contendere to the charge of possession of a controlled substance with the intent to sell conditioned on his right to appeal from the court's denial of his motions to suppress and to dismiss. The state entered a nolle prosequi on the remaining charges. On February 8, 2001, the defendant failed to appear for sentencing. In 2004, he was apprehended in Arizona and was returned to Connecticut. On February 2, 2005, the defendant pleaded guilty to failure to appear in the first degree and was sentenced to four years incarceration on the charge of possession of a controlled substance with the intent to sell and one year of incarceration, to be served consecutively, on the failure to appear charge. This appeal followed. Additional facts will be set forth as necessary.

The defendant's claim that the court improperly denied his motion to suppress his statements to the police is twofold. The defendant first contends that the court improperly concluded that his confession was voluntary. He also argues that the court improperly determined that he voluntarily, knowingly and intelligently waived his *Miranda* rights. We disagree.

At the outset, we set forth our standard of review of the defendant's claims. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in

the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 279, 764 A.2d 1251 (2001). Under the clearly erroneous standard, "[w]e cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *Boccanfuso* v. *Green*, 91 Conn. App. 296, 306, 880 A.2d 889 (2005).

I

The defendant first contends that the incriminating statements he made to the police were involuntary. Specifically, the defendant argues that his incriminating statements were given only as a result of threats, coercion and inducements made by the police. We are not persuaded.

"In order to be voluntary a confession must be the product of an essentially free and unconstrained choice by the maker. . . . [T]he test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined . . . ." (Internal quotation marks omitted.) *State* v. *Azukas*, 278 Conn. 267, 290, 897 A.2d 554 (2006).

"The ultimate question of whether a defendant's will has been overborne, thus resulting in an involuntary statement in a particular case, involves, as noted, an assessment of the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." (Internal quotation marks omitted.) *State* v. *Madera*, 210 Conn. 22, 40–41, 554 A.2d 263 (1989). "Furthermore, the scope of review is plenary on the ultimate question of voluntariness, but the trial court's findings regarding the circumstances surrounding the defendant's questioning and confession are findings of fact that will not be overturned unless

they are clearly erroneous." *State* v. *Azukas*, supra, 278 Conn. 290.

The court found that the police conduct was neither intimidating nor coercive in any manner. Specifically, the court stated: "Although at the time the defendant actually confessed he was handcuffed and under guard, there [were] several factors that demonstrated that the defendant's confession was voluntary. According to testimony, the defendant was given his *Miranda* rights prior to the confession. The defendant said 'yes' when asked if he understood those rights. There was no testimony that the defendant was coerced or abused or that he suffered from any physical or mental impairments or that he was under the influence of alcohol or other controlled substances. He claims that his confession was coerced because a detective said that his wife would be arrested also unless he took full responsibility for all the contraband. Confessions given under similar circumstances have been found not to be sufficiently coercive to require exclusion of a confession based on the totality of circumstances. In this case, the defendant's confession is found to have been given voluntarily based on the totality of circumstances. . . .

"The defendant, although handcuffed, was treated fairly during the search of the home. The defendant's handcuffs were loosened when he complained that they were too tight, and, at the defendant's request, he was moved onto the back porch. The defendant initiated general conversation with . . . Case regarding the specifics of the search and . . . Case answered the defendant's questions. These actions indicate that the police were not mistreating the defendant in order to obtain a confession." (Citations omitted.) On the basis of these findings and conclusions, which were amply supported by the record, the court denied the defendant's motion to suppress his statements made to the police while in

his house, in which he took responsibility for the package that was delivered and its contents. Moreover, and as stated by the court previously, the only evidence in the record that could potentially support the defendant's claim that he was mistreated, threatened or coerced by the police in any way was the defendant's claim that his statements "were the result of coercion and duress because the police threatened to arrest the defendant's wife unless he took ownership over the mystery package . . . ."[3] The court considered whether this conduct by Detective John Threlfall overbore the defendant's will and properly concluded that this alone was not sufficiently coercive to render the statements involuntary. See *Anderson* v. *State*, 224 Ga. App. 608, 610, 481 S.E.2d 595 (1997) (officer's statement to defendant that officer considering charging girlfriend with crime did not render confession exonerating her involuntary).

Because the court's findings that the police did not coerce or mistreat the defendant in any way, that the defendant initiated the conversation with the police, that the defendant was provided with *Miranda* warnings, and that there was no evidence of any psychological or physical impairment or that the defendant was under the influence of any substances are supported by the record, we conclude that they are not clearly erroneous and that the court properly concluded that the defendant's statements were voluntarily made.

---

[3] Detective John Threlfall testified that at the very end of the search of the defendant's home, he asked the defendant if "the parcel, the marijuana contents specifically, as well as the marijuana evidence downstairs in the residence, was his or if it was his wife's. Or, you know, I was trying to understand, you know, who's—who is going to lay claim to these items. He said his wife had nothing to do with it and that it was his. Threlfall testified that he told the defendant that he could arrest either or both the defendant and his wife on the basis of the circumstances of the delivery and the evidence found in their home, but on the basis of the defendant's statements that his wife had nothing to do with the marijuana, he decided not to arrest her.

## II

The defendant also claims that he made the statements without a knowing, intelligent and voluntary waiver of his *Miranda* rights. Specifically, the defendant argues that the incriminating statements he made in his home should be suppressed because he never expressly or affirmatively stated that he wanted to waive his *Miranda* rights. Although the state concedes that there was no express waiver of *Miranda* rights by the defendant, it argues that a waiver may be inferred or implied from his actions and course of conduct. We agree with the state.[4]

"To be valid, a waiver must be voluntary, knowing and intelligent. . . . The state has the burden of proving by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently waived his *Miranda* rights. . . . Whether a purported waiver satisfies those requirements is a question of fact that depends on the circumstances of the particular case." (Citations omitted; internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 50, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). "Although the issue [of whether there has been a knowing and voluntary waiver] is . . . ultimately factual, our usual deference to fact-finding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the

---

[4] With respect to the waiver of his *Miranda* rights, the defendant argues that the same police conduct that coerced him into giving statements also establishes that his waiver was not knowing, intelligent and voluntary. As the evidence we have discussed demonstrates, however, the police advised the defendant of his *Miranda* rights and ascertained that he understood those rights. The defendant's statements, following these warnings, were initiated by him in the hope of explaining what he knew the police already knew or were about to discover. We conclude, therefore, that the evidence that establishes the voluntariness of the defendant's statements equally establishes that his waiver of his *Miranda* rights was knowing, intelligent and voluntary. See *State* v. *Roseboro*, 221 Conn. 430, 444, 604 A.2d 1286 (1992).

record to ascertain whether such a factual finding is supported by substantial evidence." *State* v. *Harris*, 188 Conn. 574, 580, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983).

Moreover, "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case . . . [and] in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina* v. *Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979). "Although mere silence of the accused is not enough to establish waiver . . . the record need not show a specific expression of the relinquishment of rights." (Citation omitted.) *State* v. *Barrett*, 205 Conn. 437, 450, 534 A.2d 219 (1987).

Some of the factors that are used to determine whether a defendant impliedly waived his rights are (1) whether the defendant understood his rights, (2) the defendant's willingness to speak, (3) whether the defendant expressed any desire to remain silent, (4) whether the defendant's answers were in a narrative form rather than monosyllabic responses, (5) whether there are any facts that cast doubt on the voluntariness of the waiver and (6) whether the defendant subsequently exercises his *Miranda* rights. See *State* v. *Rasmussen*, 225 Conn. 55, 78–79, 621 A.2d 728 (1993); *State* v. *Madera*, 210 Conn. 22, 49–50, 554 A.2d 263 (1989); *State* v. *Barrett*, supra, 205 Conn. 450–51; *State* v. *Toste*, 198 Conn. 573, 583, 504 A.2d 1036 (1986); *State* v. *Aversa*, 197 Conn. 685, 697, 501 A.2d 370 (1985).

A review of the record reveals that there was substantial evidence that the defendant, as evident from his

course of conduct, implicitly waived his right to remain silent. Here, the court found that the defendant understood his rights and freely chose to make statements to the police.[5] See *State* v. *Shifflett*, 199 Conn. 718, 732–34, 508 A.2d 748 (1986) (fact that defendant fully understood his rights, coupled with his agreement to speak to police, fully supports finding of implicit waiver). Additionally, the record demonstrates the defendant's willingness to speak to Case, which is highly probative of the finding that he waived his rights. Case testified that the defendant initiated the conversation with him and continually asked him questions, which Case answered. Moreover, after Case advised the defendant of his rights and began asking the defendant questions, the defendant freely and voluntarily answered Case's questions. See *State* v. *Madera*, supra, 210 Conn. 50 (fact that suspect chooses to speak after being informed of rights highly probative that he waived rights).

Furthermore, many of the defendant's answers to Case's questions were in the narrative form rather than monosyllabic. For example, Case testified that when he asked the defendant about the marijuana found in the basement, the defendant replied that he received some marijuana through a parcel delivery company with a telephone book and that he believed someone was trying to set him up. The narrative answers to Case's questions indicated the defendant's willingness to speak and his desire to waive his right to remain silent. See *State* v. *Toste*, supra, 198 Conn. 583 (fact that answers

---

[5] The court credited Case's testimony. Case testified that he read the defendant his *Miranda* rights and specifically told the defendant that "he didn't have to talk to me, but that if he was willing to, I was willing to listen." Case also testified: "Basically, when I gave him his rights, I told him he doesn't have to answer my questions if he doesn't want to. And he stated that he understood." Case also specifically asked the defendant if he understood his rights, and the defendant responded in the affirmative.

were narrative and not yes or no supports finding of implicit waiver).

Moreover, and as discussed previously, there is no evidence in the record to indicate any coercive, deceptive or overreaching conduct by the police that caused the defendant to waive his *Miranda* rights. See *State* v. *Aversa*, supra, 197 Conn. 697; *State* v. *Gonzalez*, 74 Conn. App. 580, 595, 814 A.2d 384 (fact that record does not show defendant coerced or intimidated supports finding of waiver even where defendant refused to sign waiver of rights form), cert. denied, 263 Conn. 915, 821 A.2d 771 (2003). Finally, the record reveals that the defendant subsequently invoked his *Miranda* rights, which is another indicator that he was aware of his rights and had voluntarily waived them up to that point. Our Supreme Court has held that "the [invocation] of the right to remain silent after an initial willingness to speak with police is a strong indication that the defendant understood his rights." (Internal quotation marks omitted.) *State* v. *Reynolds*, supra, 264 Conn. 52–53; see also *State* v. *Pecoraro*, 198 Conn. 203, 207–209, 502 A.2d 396 (1985) (waiver implied from defendant's exercise of right to cut off further questioning). We therefore conclude that the state has met its burden of proving, in light of the totality of the circumstances, that the defendant's waiver was knowing, intelligent and voluntary and that the court properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.